UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

JAVEN TYLER JACKSON,  :
        Plaintiff,  :
          :
    v.  :  No.  5:20-cv-5207
          :
MICHAEL HOLLAND,  :
        Defendant.  :
_____

**O P I N I O N**
Bench Trial – Judgment for Defendant in part and Plaintiff in part

**Joseph F. Leeson, Jr.**                                                              **February 28, 2024**
**United States District Judge**

## I.    INTRODUCTION

This is an excessive force action by *pro se* plaintiff Javen Jackson against former corrections officer Michael Holland, with counterclaims asserted against Jackson for assault and battery. The events at issue took place on February 10, 2020, at Lancaster County Prison. Jackson was a pretrial detainee at that time. On that day, Jackson was walking in between cells during medication distribution, violating prison rules, and Holland threatened to put Jackson on "lockdown" the following day. This resulted in a verbal dispute between the two men, which quickly became physical. The details of this physical altercation are heavily disputed by the parties. Jackson claims that Holland punched him three times on the face and head, including once after being handcuffed, but denies harming Holland. Holland denies harming Jackson and claims that Jackson punched him twice on the head and attempted to strangle him. Therefore, after holding a two-day bench trial, the Court is presented with credibility issues to resolve.

Unfortunately, the unreliable testimony presented by both Jackson and Holland left the Court without a clear picture of what really happened in that prison cell, and the Court concludes that both parties have failed to prove their claims by a preponderance of the evidence. Therefore, all claims and counterclaims in this case are dismissed, with neither party receiving any relief.

## II.     FINDINGS OF FACT

1. The events at issue in this case took place on February 11, 2020 at Lancaster County Prison in Pennsylvania. *See* Def. Ex. D-2; Def. Ex. D-3.

2. At all times relevant, and on that date, Jackson was a pretrial detainee housed at Lancaster County Prison.[1]

3. On that date, Holland was a corrections officer at Lancaster County Prison and had been in that position for approximately seven years, until later resigning due to ongoing mental health issues. Trial Transcript, December 11, 2023 ("TT") p. 16:5-7, 16:12-16.

4. On February 11, 2020, Holland observed Jackson walking in between cells during medication distribution, in violation of prison rules. TT at 18:5-14, 33:1-9.

5. As a result, Holland threatened to put Jackson on "lockdown," a punishment which confines an inmate to his cell without recreational privileges. *See* TT at 31:23-25, 32:1-3.

6. Thereafter, Holland locked Jackson down for the day, and Jackson returned to his cell. TT at 18:12-17, 114:8-13.

---

[1] The Court conducted a review of publicly available dockets and found the criminal docket sheet at number CP-36-CR-0006803-2019 from the Court of Common Pleas of Lancaster County which shows that Jackson was awaiting trial at the time of the events in the instant action. *See Hightower v. City of Phila.,* No. 21-4075-KSM, 2022 U.S. Dist. LEXIS 68905, at *4 n.4 (E.D. Pa. Apr. 14, 2022) (taking judicial notice of the plaintiff's criminal docket, which was a matter of public record, to determine whether he was a pretrial detainee at the time of the alleged attack in the correctional facility).

7. At the end of medication distribution, the corrections officers prepared for "block out," which is the time of day when the inmates are permitted to engage in social and recreational activities outside of their cells. TT at 18:15-16, 32:6-12.

8. Because Jackson was locked down, he was not permitted to participate in the "block out" activities. However, his cellmate, Cailen Herr, was not locked down, so Holland opened Jackson's cell door to give Herr the opportunity to leave the cell and participate in the block out activities. *See* TT at 18:15-19.

9. After approximately five minutes, Holland began shutting the cell doors for block out and returned to Jackson's cell. However, Jackson was standing in the doorway of the cell, impeding Holland's ability to close the cell door. TT at 18:20-23, 19:1-7.

10. Jackson, who was still visibly upset about being locked down, told Holland, "[t]his is bull s[**]t," and asked not to be locked down, promising "it [wouldn't] happen again." TT at 18:12-17, 114:8-13.

11. In response, Holland, who was standing approximately three feet from the cell's doorway, directed Jackson more than once to turn around to be handcuffed. TT at 19-13-14, 19:17-23.

12. When Jackson did not turn around, Holland grabbed his "OC spray," or mace, preparing to spray Jackson. TT at 19:23-25, 20:5-11.

13. Jackson, believing that he was about to sprayed, grabbed a box lid from inside the cell to protect his face from the line of fire. TT at 54:11-15.

14. However, Holland's OC spray failed to deploy. TT at 20:5-7, 54:3.

15. Immediately thereafter, a physical altercation ensued between the two men from within the cell, which lasted approximately a minute and a half to two minutes. *See* TT at 20:12-20, 23:6-20, 114:11-25, 115:1-9; Def. Ex. D-13.

16. At some point during the altercation, Holland restrained Jackson against the wall of the cell and handcuffed him. *See* TT at 59:21-23, 60:3-9.

17. At some point during or immediately after the scuffle, Holland called a "Code 13," which signals that an officer needs assistance. TT at 17:13-14, 23:11-20; Def. Ex. D-2.

18. At the time of this incident, Holland was six feet, three inches tall, weighing about 290 to 300 pounds, and Jackson was five feet, eight inches tall, weighing about 160 to 180 pounds. *See* TT at 27:12-14, 22:4-9. *See also* Def. Ex. D-7 ("Mugshot Profile Poster").

19. After the scuffle was over and Jackson was in handcuffs, four corrections officers, Jamal Leath, Samantha Lewis, Byron Germer, and Cody Albright, arrived in response to the Code 13. Def. Ex. D-3; Def Ex. D-5. *See* TT at 80:3-7.

20. After seeing redness on Holland's face and neck, Leath directed Holland to go to the Supervisor's Office, where photos were taken of him. Holland was red, flushed, and sweaty in the photos, with patches of redness on his face, left ear, left hand, and neck. Def. Ex. D-3; Def. Ex. D-8.

21. Meanwhile, Leath and Lewis escorted Jackson to be evaluated by prison medical staff. Def. Ex. D-3

22. A nurse that worked at the prison, Jodi Raider, asked Jackson if he had any injuries, and Jackson responded that he was not aware of any. *See* Def. Ex. D-5. *See also* TT at 123:1-3.

23. Lewis took photos of Jackson's face and hands. The photos do not depict any injuries.  Def. Ex. D-5; TT at 98:21-25, 99:1-10; Def. Ex. D-9.

24. Thereafter, Jackson was taken to the Restrictive Housing Unit and strip-searched. Around this time, at Jackson's request, photos were then taken of his wrists. Jackson's wrists had minor red indentations from where the handcuffs had been.  *See* Def. Ex. D-3; Def. Ex. D-9.

### III. LEGAL STANDARDS

#### A. Excessive Force Claims under the Fourteenth Amendment Asserted by Pretrial Detainees – Review of Applicable Law

The Due Process Clause of the Fourteenth Amendment governs claims asserted by pretrial detainees alleging excessive force was used against them.  *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation and citation omitted).  For a due process violation based on excessive force, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Id.* at 396-97. Whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'" *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The following factors may be considered by a court when evaluating reasonableness:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397.

### B. Assault and Battery – Review of Applicable Law

In Pennsylvania, "assault" is defined as "intentionally placing another person in imminent apprehension of a harmful or offensive bodily contact[,]" *Nautilus Ins. Co v. Motel Mgmt. Servs. Inc*, No. 21-2590, 2022 U.S. App. LEXIS 30033, at *6 (3d Cir. Oct. 28, 2022) (citing *Sides v. Cleland*, 648 A.2d 793, 796 (Pa. Super. Ct. 1994)) (internal marks and citations omitted), and "battery is defined as an intentional harmful or offensive contact with the person of another." *C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008) (internal quotations omitted). For battery, "[t]he fact that contact occurs without consent is sufficient to establish that it is 'offensive,' and '[n]o intent to harm the [plaintiff] need be established.'" *Nace v. Pennridge Sch. Dist.*, 185 F. Supp. 3d 564, 584 (E.D. Pa. 2016) (quoting *Cooper ex rel. Cooper v. Lankenau Hosp.*, 51 A.3d 183, 191 (Pa. 2012)). In sum, "an assault is an intentional attempt to use injurious force and a battery is a completion of that attempt." *Link v. Mauz*, 496 B.R. 777, 782 (Bankr. M.D. Pa. 2013) (citing *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994); *Cook v. Vernachio*, No. 1025 C.D. 2007, 2008 Pa. Commw. Unpub. LEXIS 6, 2008 WL 9396736, at *3 (Pa. Cmlth. May 14, 2008)). *See also Humphries v. Barber*, No. 20-64, 2024 U.S. Dist. LEXIS 13808, at *14 (M.D. Pa. Jan. 25, 2024) ("In other words, battery is an offensive touching without consent, and assault is an action that makes a victim believe that a battery is about to occur.").

### IV. ANALYSIS

Jackson asserts a claim of excessive force under the Fourteenth Amendment, and Holland asserts counterclaims under state law for assault and battery. All of the claims in this case hinge almost entirely on the testimony of two men: Jackson and Holland. "As the finder of fact in this bench trial, the Court is required to make subjective credibility determinations about the

witnesses who testified." *Millbrook v. United States*, No. 12-421, 2017 U.S. Dist. LEXIS 67851, at *7 (M.D. Pa. May 4, 2017) (cleaned up).  Here, based on this Court's observations of the testimony and evidence presented at trial, and as reflected in the findings of fact reached above, this Court finds the testimony of both Jackson and Holland to be not credible, particularly their testimony about the physical altercation in the prison cell. Therefore, following the application of the governing law to the evidence presented at trial, and having weighed the credibility of the testimony, this Court concludes that both parties have failed to establish their claims by a preponderance of the evidence.

### A. Excessive Force Claim

Jackson has not met his burden to prove that Holland violated his Fourteenth Amendment rights.  To summarize Jackson's position at trial, he argued and testified that Holland was the aggressor of the incident, and that Holland unprovokedly attempted to mace him and then tackled and repeatedly punched Jackson, as well as hitting his cellmate, after the OC spray malfunctioned.  *See* TT at 114:11-25, 115:1-14.  However, as detailed in the factual findings above, the Court finds that Jackson failed to follow Holland's order to turn around to be handcuffed,[2] and therefore, Holland would have been justified to use some reasonable amount of force to restrain Jackson and restore order.[3]  Nevertheless, the sparse evidence presented leaves

---

[2]    The Court partly credits Holland's testimony, specifically that he had directed Jackson to turn around to be cuffed and that Jackson had refused.  The Court finds this version of events to be more credible than Jackson's claim that Holland, unprompted, attempted to mace him, and this version of events is also supported by Jackson's admission that he was upset after being locked down for the day.

[3]    Indeed, if Holland had successfully used OC spray against Jackson, that very likely would have been a permissible use of force.  *See Martin v. Wetzel*, No. 18-215, 2021 U.S. Dist. LEXIS 129509, at *29 (W.D. Pa. July 12, 2021) ("It is reasonable for a corrections officer to use OC spray to effectuate removing a prisoner from his cell when the inmate has refused multiple orders to come to the door to submit to handcuffing.").  *See also Passmore v. Iannello*, 528 Fed. Appx. 144, 148 (3d Cir. 2013) (holding that a corrections officer's use of pepper spray was

the Court unable to determine the amount of force used by Holland, and therefore Jackson has not proven by the preponderance of the evidence that the amount of force used by Holland was excessive such that it amounted to a violation of his constitutional rights.

Jackson's testimony is, of course, crucial to support his claim. However, the Court finds Jackson's statements at trial regarding the amount of force used by Holland to be unreliable. Undoubtably, Holland used *some* force to restrain Jackson, given that he was eventually handcuffed after initially resisting, but the Court does not credit Jackson's testimony that he was unprovokedly punched with a closed fist more than once in the face and on the side and back of his head.[4] Nor does the Court credit Jackson's testimony that Holland hit Jackson's cellmate.[5] For those reasons, the Court does not give weight to Jackson's testimony about the physical altercation, which appears to be exaggerated or untruthful.

The Court cannot hold that Holland used a constitutionally impermissible amount of force, because even with the available factual findings as set forth above, the Court is seriously limited in its ability to weigh the *Kingsley* reasonableness factors, let alone weigh them in favor of Jackson. Without credible testimony on the issue, Jackson cannot prove that Holland purposefully or knowingly used an amount of force against him that was objectively unreasonable, and the approximate amount of force used by Holland is indeterminable from the testimony given by either Jackson or Holland, who have both been largely discredited by the

---

reasonable under the circumstances where an inmate repeatedly refused to follow direct commands).

[4] Though Holland was several inches taller and over one hundred pounds heavier than Jackson, the picture of Jackson's face immediately after the altercation does not depict any visible injury. Additionally, Jackson did not disclose any injury to prison medical staff.

[5] Although Jackson testified that "Holland rushed me and Cailen Herr and hit both of us[,]" the video surveillance footage shows that at the approximate time the physical altercation was taking place, Herr was outside of the cell. *See* Def. Ex. D-13 at 5:49-6:11.

Court, as further discussed *infra*. There is no eyewitness account, or any other evidence for that matter, to support Jackson's version of events. Further, Jackson walked away from the altercation visibly uninjured or with only *de minimis* injuries,[6] and his injuries alone fail to support his excessive force claim in this case. Without any credible testimony or evidence of injury, Jackson has simply failed to prove his excessive force claim by a preponderance of the evidence.

### B. Assault and Battery Counterclaims

Likewise, the Court finds that Holland has failed to prove his assault and battery counterclaims by a preponderance of the evidence. To meet his burden, Holland primarily relies upon his own testimony at trial, accompanied by testimony of other corrections officers who responded to the scene and various exhibits, including, *inter alia*, photos and incident reports of the events at issue. However, the crux of the case rests on Holland's own testimony. To summarize Holland's position at trial, he argued that Jackson was the aggressor of the incident, testifying that Jackson told Holland, "I'm going to f[**]k you up[,]" refused to be handcuffed, and then pulled Holland into the prison cell before punching and strangling him. *See* TT at 19:9-23:18.

However, the Court does not give much weight to Holland's trial testimony, especially as it pertains to the physical altercation that took place. The Court finds that Holland's statements regarding the amount of force he used to restrain Jackson were deliberately evasive as to the type

---

[6] The only possible injuries that Jackson can point to are the minor red indentions on his wrists caused by being put in handcuffs. However, without more, this injury alone certainly cannot meet Jackson's burden to show excessive force under the Fourteenth Amendment, particularly here where the use of handcuffs would have been justified to restore discipline after Jackson had refused to follow an order. *See Collins v. Bopson*, 816 F. Supp. 335, 337-40 (E.D. Pa. 1993) (in Eighth Amendment context, holding that tight application of handcuffs was a *de minimis* use of physical force as a matter of law).

of contact or amount of force used to place Jackson into handcuffs.[7]  Moreover, Holland's repeated statements at trial that Jackson "strangled" him were inconsistent with prior statements made by Holland both in his incident report immediately following the altercation and worker's compensation injury report filed by Holland shortly thereafter.[8]  For those reasons, the Court discredits Holland's testimony about the physical altercation, which appears to be exaggerated or untruthful.[9]  There are no other eyewitness accounts to support Holland's version of events, as the other corrections officers did not arrive to the scene until after the altercation had ended.  Moreover, the photos taken of Holland after the incident do not alone support his contention that the redness on his face, ear, hand, and neck were more likely than not caused by being punched or strangled.[10]  Without any credible testimony or persuasive evidence of injury, Holland cannot

---

[7]  Although Jackson, representing himself *pro se*, attempted to elicit testimony from Holland about the kind of contact or amount of pressure Holland used to handcuff Jackson, the only testimony from Holland was that he "attempt[ed] to restrain [Jackson] into handcuffs the entire time[,]" "got [Jackson] into handcuffs," and "restrain[ed Jackson] to the wall." *See* TT at 60:1-4, 60:14-1, 60:19-25, 61:1-4 ("You're restrained up against the wall, I'm placing you in handcuffs, and then . . . that's the end of it.").  For example, one line of questioning went as follows:

| | |
|---|---|
| Q [Jackson, *pro se*:] | . . . when you grabbed [Jackson], there would have been some – you know, some inertia, some force of grabbing and moving him right? |
| A [Holland:] | No. I simply restrained you to the wall. |
| Q | So it was simply slow.  There was no fast movement at all. |
| A | I restrained you to the wall in defense of myself to get you into handcuffs. |

TT at 63:7-17.
[8]  Though Holland consistently claimed he was punched by Jackson twice, neither of the forms prepared by Holland shortly after the altercation mention that he was strangled, choked, or asphyxiated in any way.  *See* Def. Exs. D-2, D-14.  This major inconsistency casts serious doubt on all of Holland's claimed injuries and testimony about the physical altercation.
[9]  Likewise, for the credibility reasons already given, the Court does not give any weight to Holland's testimony that Jackson told him, "I'm going to f[**]k you up."
[10]  Holland certainly appears flushed and red, which the Court finds to be consistent with his testimony that he was "sweating" and his "blood pressure [was] up" after the effort he expended into cuffing and restraining Jackson against the prison cell wall.  *See* TT at 49:2-8.  However, for the credibility reasons already discussed, the Court does not credit Holland's testimony that he was punched twice, and these photos of Holland's redness cannot alone satisfy Holland's burden.

prove by a preponderance of the evidence that Jackson intentionally placed him in imminent apprehension of a harmful or offensive bodily contact, or that such harmful or offensive bodily contact actually occurred.

## V.  CONCLUSIONS OF LAW

The court finds that that there is no credible factual account of the physical altercation, nor other evidence sufficient to tip the scales of justice to one side of the case or the other. As the judge of the facts in this case, the Court finds that both parties have failed to present sufficient and credible factual evidence to sustain their claims or counterclaims. Therefore, judgment is entered in favor of Defendant Holland on the excessive force claim, and in favor of Plaintiff Jackson on the assault and battery counterclaims. As both parties have failed to establish their claims by a preponderance of the evidence, all remaining claims are hereby dismissed on their merits. A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge